*Litchfield,*
June,
1825.

Marshall
*v.*
Dalliber.

----◦◦----

## IMLAY and another *against* SAGE and another :

### IN ERROR.

A demand and refusal, though sufficient evidence of a conversion in an action of trover, constitute no foundation for an action of trespass.

Where a bill of exceptions filed by the plaintiff in an action of trespass *de bonis asportatis*, stated, that *if* the property in question was ever taken away by the defendant, it was taken and removed on the 22nd of *December*, 1822, when it was owned and possessed by $K$ ; that it continued to be owned and possessed by $K$., until the 17th of *February*, 1823, when $K$. assigned it to the plaintiff, who never had any actual possession of it, nor any interest in or title to it, until after the *pretended* taking and removal by the defendant ; it was held, that this statement disclosed nothing, which could subject the defendant, or give the plaintiffs a cause of action.

This was an action of trespass, for taking and carrying away a quantity of indigo, the property of the plaintiffs.

On the trial of the cause to the jury, on the general issue, before the county court in *Litchfield* county, *December* term, 1823, it was admitted, that if the property specified in the plaintiffs' declaration was ever taken away by the defendants, it was

*Imlay*
*v.*
*Sage.*

taken and removed on the 22nd of *December*, 1822, at which time it was admitted to have been owned by *Jonathan S. Kilbourn*, and to have been in his possession ; and continued to be owned and possessed by him, until the 17th of *February*, 1823. It was also admitted, that the plaintiffs never had, at any time, the actual possession of the property ; and that they never had any right of possession, or interest in or title to the property, until after the pretended taking and removal by the defendants.— The plaintiffs offered evidence to prove, that on the 17th of *February*, 1823, and not before, *Kilbourn* assigned the property to them ; that after such assignment, and before the commencement of this suit, they demanded it of *Sage*, one of the defendants, and requested liberty of him to search and examine his buildings to ascertain whether it could not there be found ; and that this request was refused by him.

Upon these facts the court charged the jury, that the plaintiffs could not maintain an action of trespass against the defendants ; and that they must return a verdict in their favour. This being done, the plaintiffs filed a bill of exceptions, and brought a writ of error in the superior court. The judgment of the county court was there affirmed ; and the record, on motion of the plaintiffs, was transmitted to this Court for revision.

*T. Smith*, for the plaintiffs in error, contended, 1. That if the defendants were liable, the plaintiffs were entitled to bring the action. By the assignment of the property to the plaintiffs, on the 17th of *February*, 1823, the possession of it was constructively transferred to them; and a constructive possession of personal property is sufficient in trespass. 2 *Wms. Saund.* 47. *a.* n. 1. *Williams* v. *Lewis*, 3 *Day*, 498.

2. That the tortious holding of the property, by the defendants, after the plaintiffs acquired title, was a new trespass, and rendered them liable in this form of action. The continuing of a trespass from day to day is a several trespass on each day. 1 *Wms. Saund.* 24 n. *Winterbourne* v. *Morgan*, 11 *East* 395. 405. *Etherton* v. *Popplewell*, 1 *East* 139. In *Peck* v. *Smith*, 1 *Conn. Rep.* 103. it was held, that the *continuance* of a shop, previously erected, on the land, subjected the defendant in trespass *quare clausum fregit.* To constitute theft, there must be a taking in the county in which the trial is had ; but the continuing in possession of stolen goods has been held to be equivalent to a taking ; and the thief may be prosecuted wherever he is found with the goods. *The State* v. *Ellis*, 3 *Conn. Rep.* 185. The

interference of one with the property of another, exercising dominion over it, without any forcible taking, is a trespass. *Gibbs* v. *Chase*, 10 *Mass. Rep.* 125. 128. Such an interference and exercise of dominion, amount to a *conversion. Bristol* v. *Burt*, 7 *Johns. Rep.* 254. 257, 8.

*J, W. Huntington*, for the defendants, remarked, that to maintain trespass, the plaintiff must have either the *actual* possession, or a *onstructive* possession resulting from the right of present possession; and that this possession, actual or constructive, must be in the plaintiff *at the time* when the trespass, which is the foundation of his action, was committed. *Smith* & al. **v.** *Milles*, 1 *Term Rep.* 475. 480. *Lechmere* v. *Thoroughgood*, 1 *Show.* 12. *Cooper* & al. v. *Chitty* & al. 1 *Burr.* 20. S. C. 1 *Bla. Rep.* 65. *B ryly* v. *Bunning*, 1 *Lev.* 173. *Putnam* v. *Wyley*, 8 *Johns. Rep.* 432. *Ward* v. *Macauley* & al. 4 *Term Rep.* 489. *Van Brunt* & al. v. *Schenck*, 11 *Johns. Rep.* 377.

He then contended, 1. That from the facts which appear in the bill of exceptions, neither *Kilbourn* nor the plaintiffs ever had *any* cause of action against the defendants.

First, it does not appear, that the defendants have, at any time, disturbed the possession of the property described in the declaration, while it was owned either by *Kilbourn*, or by the plaintiffs. All which the bill of exceptions states on this subject, is, that it was admitted, that if the property was ever taken away by the defendants, it was taken on a day specified; and that the plaintiffs acquired no right to the property until after the pretended taking of it, by the defendants. Here is obviously no admission or finding of any taking by the defendants.

Secondly, it does not appear, that the defendants, if they ever had the possession of the property, obtained it *wrongfully.* The bill of exceptions states, that *Kilbourn* continued the *owner* of it from the 22nd of *December*, 1822, to the 17th of *February*, 1823; but it does not state, that he had the *right of possession* during this period, or that he had not parted with the possession to the defendants, *by his own consent.* It is perfectly consistent with *Kilbourn's* rights as *general owner*, that he should have parted with the *special property* to the defendants; and it is also entirely consistent with every thing appearing in the bill of exceptions, that the defendants, during the whole time that *Kilbourn* owned the property, if they had the possession of it at all, had it *rightfully.*

Thirdly, it does not appear, that at the time when the plain-

tiffs became the purchasers of the property, the defendants had the possession of it; or that there *was* any such property. The defendants, if they ever had it, either rightfully or wrongfully, might, for aught the Court know, have returned it to *Kilbourn,* before the sale by him to the plaintiffs; or it might have been destroyed. On this point the bill of exceptions is entirely silent. One of the defendants refused permission to the plaintiffs to examine their buildings, to ascertain whether it was there; but he did not admit, that it was, or ever had been there, or in his possession at all.

2. That if the defendants were, in relation to *Kilbourn,* tortfeasors, the plaintiffs could not maintain *trespass* against them.

First, where the defendants came lawfully into the possession of the property in dispute, their refusal to restore it to the owner, is no trespass. The reason is, that in such case, the injury complained of results, not from any positive tort or misfeasance, but from a mere non-feasance. 1 *Chitt. Plead.* 172. 2 *Wms. Saund.* 47. *k. l.* Countess of *Shrewsbury's* case, 5 *Co. Rep.* 14. *a.* But here the original taking, as against the *plaintiffs,* was clearly lawful. The detention of the property by the defendants, then, was not *in itself* a trespass.

Secondly, it was not a trespass *by relation* to the original taking; there being no foundation in this case for the application of the doctrine of trespass by relation. The act which is made a trespass by relation, is always the *first* act in the order of time. The subsequent conduct of the defendant, being illegal, is, in certain cases, made to relate back to the original act, so as to constitute the whole but one indivisible tort; but in all such cases both the original and subsequent acts are committed against the same person. Here, however, it is attempted to unite an unlawful taking from *Kilbourn* to an unlawful detention from the plaintiffs; not to make the first act a tort as against the plaintiffs, (for it clearly was not,) but to make the second such: that is, the first act, which was no legal injury to the plaintiff, is to relate *forward* to the second, which is in itself no trespass, and thus amalgamated, they are to form but one act, and that act a tortious taking from the plaintiffs!

It is evident, that the right to sue in trespass cannot depend on what previously took place between *other* persons. All which the plaintiffs acquired by the purchase, was the property itself; and all the injury to *them,* by the act of the defendants, must consist in *withholding* it from them. Can they convert an unlawful detention into an unlawful taking, because as against the former owner, such taking was unlawful?

*P. Miner*, on the same side, declined arguing the case, remarking that the subject came to him exhausted.

PETERS, J.   I give no opinion upon several questions discussed by the counsel in this case, because they do not arise out of the record before us.

The action is trespass *de bonis asportatis ;* but it does not appear from the bill of exceptions allowed on the trial, that the defendants ever intermeddled with the property in question directly or indirectly; though it is admitted, that if the defendants ever did take and carry away the property, it was done before the plaintiffs acquired any title thereto, or possession thereof.   This hypothetical statement admits nothing, unless it be that the defendants have done nothing, and that the plaintiffs have no cause of action.

It is also admitted, that after the property was taken and carried away, "if ever," by the defendants, the plaintiffs demanded it of *Sage*, one of the defendants, and requested permission to search his buildings, to ascertain whether it could not be there found.   In an action of trover, a demand and refusal is sufficient evidence of a conversion, although it is not of itself a conversion, but is no foundation for an action of trespass, which is a tortious invasion of the possession of another.   In a case so plain, illustrations, arguments and authorities are useless.

I am of opinion, that there is no error in the judgment complained of.

HOSMER, Ch. J. and BRAINARD and BRISTOL, Js. were of the same opinion.

Judgment affirmed.